# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

**MARKEEN ELLIOTT**                                                                    **PLAINTIFF**

v.                                                                              No. 3:21-cv-00751-BJB

**RAYTHEON, INC., ET AL.**                                                             **DEFENDANT**

\* \* \* \* \*

## MEMORANDUM OPINION & ORDER

This suit arises from an employment relationship gone awry. Markeen Elliott filed suit in state court alleging that Raytheon and his labor union discriminated against him for alcoholism and wrongfully terminated him in retaliation for his requesting hand sanitizer and other Covid mitigation at work. The Defendants removed to federal court, arguing that all Elliott's claims are preempted by the Labor Management Relations Act. They then filed a motion for judgment on the pleadings. Elliott voluntarily dismissed his claims against the labor union, filed a motion to remand, and then filed an amended complaint. Elliott's amended complaint reveals that his claims are preempted by federal law and that he failed to state a plausible claim for relief.

### I.

Markeen Elliott worked for Raytheon between 2005 and 2020, allegedly without disciplinary issues. First Amended Complaint (DN 19) ¶¶ 7, 8. Elliott's opaque pleadings are difficult to understand, but he seems to rest his claims on three events. First, Elliott says that the company retaliated against him after he complained about company Covid protocols and the lack of personal protective equipment and hand sanitizer in the workplace. ¶¶ 10–12. Second, Elliott alleges the company discriminated against him on the basis of a disability after he took a leave of absence to seek treatment for alcoholism. ¶¶ 17–18. And third, Elliott claims he was terminated because he quarantined for two weeks after falling ill. ¶¶ 22–26.

After his termination, Elliott filed a grievance with his union, which denied it as incorrectly filed. ¶¶ 29–31. So Elliott sued the union and Raytheon, asserting claims for discrimination, retaliation, wrongful termination, and intentional infliction of emotional distress. FAC at pp. 4–6. A number of procedural maneuvers—the voluntary dismissal of his federal LMRA claim against the union, the remand attempt, the amendment—brought the case to this point: Raytheon's motion for judgment on the pleadings is ripe for consideration.

Because the LMRA preempts Elliott's claim, the Court has jurisdiction over the case, denies the motion to remand, and grants the motion to dismiss.

## II.

Though Elliott asserted claims under Kentucky law, they may be preempted by federal law, specifically the Labor Management Relations Act. Section 301 of LMRA provides that:

> Suits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce … may be brought in any district court of the United States having jurisdiction of the parties.

29 U.S.C. § 185(a). As the Sixth Circuit has explained, "[t]he Supreme Court has interpreted this language to require federal pre-emption of state law-based actions ... [when those actions are] 'inextricably intertwined with consideration of the terms of the labor contract.'" *Jones v. Gen. Motor Corp.*, 939 F.2d 380, 382 (6th Cir. 1991) (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985)). In practice, to maintain uniform federal law, § 301 "preempts any state-law claim arising from a breach of a collective bargaining agreement." *Smolarek v. Chrysler Corp.*, 879 F.2d 1326, 1329 (6th Cir. 1989) (en banc). "To survive preemption under § 301, the tort claims must be 'independent' of the CBA." *Mattis v. Massman*, 355 F.3d 902, 905 (6th Cir. 2004) (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 410 (1988)).

To determine whether a state-law claim is sufficiently independent to survive § 301 preemption, the Sixth Circuit has adopted a two-step inquiry. *DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 216–17 (6th Cir. 1994). "First, the district court must examine whether proof of the state law claim requires interpretation of collective bargaining agreement terms." *Id.* at 216. And second, the court "must ascertain whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state law." *Id.* If the rights were created by the CBA or if the claims require the court to interpret the CBA, the claim is preempted; but if the right exists independently in some source of state law, preemption is not warranted. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987) ("Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement.") (quoting *Int'l Brotherhood of Elec. Workers v. Hechler*, 481 U.S. 851, 859 n.3 (1987)).

"Courts engaging in this analysis are not bound by the 'well-pleaded complaint' rule." *Adamo Demolition Co. v. Int'l Union of Operating Eng'rs Loc. 150*, 3 F.4th 866, 873 (6th Cir. 2021). Rather, courts must "look[] to the essence of the plaintiff's claim … to determine whether the plaintiff is attempting to disguise what is essentially a contract claim as a tort." *Id.* (quoting *DeCoe*, 32 F.3d at 216).

In short, courts will look to the legal character of the claim to determine whether preemption is warranted: A right rooted in state-law external to the CBA and independent of any understanding embodied in the collective bargaining agreement does not raise a federal question and cannot stand in the way of remand to state court. *See, e.g., Paul v. Kaiser Found. Health Plan of Ohio*, 701 F.3d 514, 522 (6th Cir. 2012) (finding no § 301 preemption of a claim under an Ohio civil rights statute because the plaintiff's "complaint does not refer to any rights under the CBA and does not even hint at the need to resolve any dispute concerning interpretation of CBA terms"). But claims that depend on an interpretation of the CBA are preempted and may be resolved in federal court. *See, e.g., Mattis*, 355 F.3d 902 (concluding IIED claim preempted because "[w]ithout reference to the CBA, [the court] could not possibly know whether [defendant] acted outrageously").

### III.

Does a federal court have jurisdiction over the state-law claims raised in this case? It does if federal law—the LMRA—preempts at least one of those claims. Determining whether § 301 preemption applies requires examining Elliott's complaint to tell whether any of the claims are preempted. Raytheon argues Elliott's IIED, retaliation, and discrimination claims are, but implicitly recognizes that the unlawful-termination claim raises a question of state rather than federal law. *See* MJOP (DN 23) at 6–10 (declining to argue that the LMRA preempts Elliott's wrongful-termination claim, and instead contending it is displaced by Kentucky statutory law).

Elliott argues that his employer intentionally caused him emotional distress when it discharged him after his fifteen years of faithful service. FAC ¶ 43. He says this conduct was "outrageous and wanton" and caused him great emotional harm. ¶¶ 41–43.

To prevail on an IIED claim under Kentucky law, the plaintiff must establish: (1) intent or recklessness; (2) "outrageous and intolerable" conduct that offends "generally accepted standards of decency and morality"; (3) causation; and (4) severe emotional distress. *Miracle v. Bell County Emergency Med. Servs.*, 237 S.W.3d 555, 560 (Ky. Ct. App. 2007). The Kentucky Supreme Court has explained that the tort is "not available for 'petty insults, unkind words and minor indignities.' Nor is it to compensate for behavior that is 'cold, callous and lacking sensitivity.'" *Id.* (quoting *Kroger Co. v. Willgruber*, 920 S.W.2d 61, 65 (Ky. 1996), and *Humana of Ky. v. Seitz*, 796 S.W.2d 1, 4 (Ky. 1990)). Rather, it is available only "to redress behavior that is truly outrageous, intolerable and which results in bringing one to his knees." *Id.* And "[t]he mere termination of employment and the resulting embarrassment do not rise to the level of outrageous conduct and resulting severe emotional distress necessary to support a claim for IIED." *Id.*

The Sixth Circuit's decisions in *DeCoe* and *Mattis* govern the preemption analysis. In *DeCoe*, the Sixth Circuit considered an IIED claim based on an allegedly outrageous termination. The court explained that the claim was preempted by § 301 because the court would have to interpret the collective bargaining agreement to ascertain whether the defendant's conduct was extreme and outrageous. 32 F.3d at 219–20. A "defendant has not acted outrageously," the court explained, if "'he has done no more than to insist upon his legal rights in a permissible way.'" *Id.* at 219 (quoting *Polk v. Yellow Freight Sys., Inc.*, 801 F.2d 190, 195 (6th Cir. 1986)). Similarly in *Mattis*, the Sixth Circuit explained that an IIED claim based on an employee's termination was preempted because the court "could not possibly know whether [defendant] acted outrageously or was merely insisting on his legal rights as a supervisor charged with ensuring compliance with the rules of the factory," without review of the terms of the collective bargaining agreement. 355 F.3d at 908; *see Gilreath v. Clemens & Co.*, 212 F. App'x 451, 462–63 (6th Cir. 2007) (same). Certainly not *all* IIED claims are preempted by § 301. For example in *Local Union No. 369 of Int'l Brotherhood of Elec. Workers ex rel Fackler v. Kentucky Ass'n of Elec. Coop.*, No. 3:12-cv-847, 2013 WL 1089094, at *5 (W.D. Ky. Mar. 14, 2013), a judge in this District declined to find preemption of an IIED claim that was based upon unsafe activities, racial slurs, and challenges to physical fights because "[n]o reasonable interpretation" of the CBA would cover those claims. *See also Peterson v. BMI Refractories*, 132 F.3d 1405, 1413 (11th Cir. 1998) (IIED claim not preempted because the actions at issue—racial taunts and physical violence—"cannot arguably be sanctioned by the terms of the CBA").

Here Elliott expressly bases his IIED claim on the circumstances around his termination. He says the company terminating him after fifteen years of service was extreme and wanton conduct that caused him emotional harm. FAC ¶¶ 41–43. This claim is made with explicit reference to Elliott's seniority with the company and his years of good service. Elliott's claim essentially boils down to an argument that Raytheon violated the collective-bargaining agreement when it terminated him without regard for his years of service. Framed this way, his claims are much more akin to *Mattis*'s preempted contract claims than to the tort claims of physical threats and racism complained of by the plaintiff in *Fackler*. The Court cannot ascertain the outrageousness of the company's conduct without reference to the CBA's nondiscrimination provision, *see* MJOP at 4 (quoting attached CBA), so this claim is preempted, *see DeCoe*, 32 F.3d at 219; *Mattis*, 355 F.3d at 908.

\* \* \*

Because all Elliott's claims arise from the same transaction or occurrence, federal jurisdiction over the state-law IIED claim, based on LMRA preemption, permits the Court to exercise supplemental jurisdiction over the remaining claims. 28 U.S.C. § 1367; *see Adamo Demolition Co.*, 3 F.4th at 874–75; *Kitzmann v. Loc. 619-*

4

*M Graphic Communications Conf. of Int'l Brotherhood of Teamsters*, 415 F. App'x 714, 719–20 (6th Cir. 2011) ("All of the remaining claims, which arose out of the same series of events … fell within the district court's supplemental jurisdiction, even if they were not preempted.").

### IV.

As to the merits, Elliott raises four grounds for relief: IIED, wrongful termination in violation of public policy, disability discrimination, and retaliation. None is well-pled, according to Raytheon, warranting judgment on the pleadings.

A court reviewing a motion for judgment on the pleadings under FED. R. CIV. P. 12(c) applies the same standard that governs a motion to dismiss under FED. R. CIV. P. 12(b)(6). *See Roth v. Guzman*, 650 F.3d 603, 605 (6th Cir. 2011). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

**A. IIED.** In *Allis-Chalmers Corp. v. Lueck*, the Supreme Court explained that state-law claims that require an interpretation of a CBA may be dismissed as preempted. 471 U.S. 202, 220 (1985). As discussed above, Elliott's vague references to the emotional distress he suffered after being fired will require the Court to interpret the CBA to ascertain whether Raytheon behaved outrageously. This is reason enough to dismiss the claim as preempted by federal law. When the resolution of a state-law claim depends on the terms of a collective bargaining agreement, the claim should either be dismissed as preempted or else treated as a § 301 claim. *Id.*; *see, e.g., DeCoe*, 32 F.3d at 219–20 (affirming summary judgment on preempted claims without review of the merits of the claim under federal contract law); *Lovely v. Aubrey*, 188 F.3d 508, 508 (6th Cir. 1999) (unpublished table decision) (affirming dismissal of preempted claim).

**B. Discrimination.** This claim is not well pled. Elliott says he is "disabled … as defined by the Kentucky Civil Rights Act," KRS 344, because he suffers from "alcoholism," FAC ¶ 36. He accuses the company of offering a pretextual reason for his termination, when it was really motivated by anti-alcoholic bias. ¶¶ 35–40.

Under the Kentucky Civil Rights Act, KRS § 344.040(1), an employer may not "discharge any individual, or otherwise … discriminate against an individual with respect to … employment, … because the person is a qualified individual with a disability." The Kentucky Supreme Court "has consistently interpreted the civil rights provisions of KRS Chapter 344 consistent with the applicable federal anti-discrimination laws." *Williams v. Wal-Mart Stores, Inc.*, 184 S.W.3d 492, 495 (Ky. 2005).

So to prevail on a disability-discrimination claim, a Kentucky plaintiff must show "(1) that he has a disability; (2) that he was otherwise qualified for his position; and (3) that his employer subjected him to discriminatory treatment solely by reason of his disability." *Brohm v. JH Props., Inc.*, 149 F.3d 517, 520 (6th Cir. 1998) (interpreting Kentucky law); *see Brooks v. Lexington-Fayette Urban County Housing Auth.*, 132 S.W.3d 790, 797 (Ky. 2004).

Elliott's allegation fails the first prong. The Kentucky Civil Rights Act defines disability as "(a) A physical or mental impairment that substantially limits one … or more of the major life activities of the individual; (b) A record of such an impairment; or (c) Being regarded as having such an impairment." KRS § 344.010(4). But the Kentucky General Assembly explicitly excluded those with "current or past … alcohol abuse problems … from this section" and from the definition of "disability" under the Kentucky civil rights statutes. *Id.* For purposes of KRS § 344.010, Elliott's alcoholism is not a qualifying disability and his claim fails on that basis alone.

**C. Wrongful-termination and retaliation claims.** These fail too. Elliott says he was wrongfully terminated as retaliation after he "raised several complaints about the lack of protective equipment at work," "the lack of hand-sanitizer," and "how the work-placed was not being sanitized." FAC ¶¶ 11–13. As with the discrimination claim, Elliott rests his wrongful-termination and retaliation claims on KRS § 344 generally.[1]

### 1.

KRS § 344.040 is the provision of the Kentucky Civil Rights Act that sets out the categories of persons the Act protects. The statute specifically proscribes discharge of any person "because of the individual's race, color, religion, national origin, sex, age forty (40) and over, because the person is a qualified individual with a disability, or because the individual is a smoker or nonsmoker." KRS § 344.040(1). And KRS § 344.280(1) makes it unlawful for a person "[t]o retaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by this chapter, or because he has made a charge, filed a complaint, testified, assisted,

---

[1] There is a non-frivolous argument that Elliott's failure to plead his cause with specificity should lead to dismissal of the claims at issue. Federal Rule of Civil Procedure 8(a)(2) requires a complainant to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Rather than citing a particular law or right Elliott says was violated, he cited to an entire chapter of the Kentucky Revised Statutes. FAC ¶¶ 33, 40. While (really) short, this blunderbuss citation doesn't do anything to focus the Court's attention on the legal rights Elliott claims; it isn't even a "formulaic recitation of the *elements* of a cause of action." *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555) (emphasis added).

or participated in any manner in any investigation, proceeding or hearing under this chapter." *See Ky. Dep't of Corr. v. McCullough*, 123 S.W.3d 130, 133–34 (Ky. 2003).

To prevail on a retaliatory-discharge claim, a plaintiff must establish: "(1) she engaged in a protected activity, (2) she was disadvantaged by an act of her employer, and (3) there was a causal connection between the activity engaged in and the [defendant] employer's act." *Banker v. Univ. of Louisville Athletic Ass'n*, 466 S.W.3d 456, 460 (Ky. 2015) (quoting *Ky. Ctr. for the Arts v. Handley*, 827 S.W.2d 697, 701 (Ky. Ct. App. 1991)). But the Kentucky Civil Rights statute doesn't protect any of the conduct Elliott says he engaged in. Elliott says the company fired him after he asked about personal-protective equipment and hand sanitizer. FAC ¶¶ 11–13. But the Kentucky Civil Rights statute protects people from retaliation if they seek to assert their *rights provided by the statute*, which protects individuals from discrimination based on personal characteristics (age, sex, race, religion, etc.). The statute doesn't say anything about employees who complain about workplace safety. *Contra McCullough*, 123 S.W.3d at 133–34 (defendant retaliates against female state correctional officer who was engaged in a formal EEOC investigation for gender discrimination).

Raytheon recognized this flaw in Elliott's pleadings, noting that KRS § 388.121, rather than KRS § 344, protects employees from discrimination and retaliation based on complaints about workplace safety. *See* MJOP at 10 n.5. KRS § 388.121(1) & (3) authorize employees who suspect "violation[s] of an occupational safety and health standard" to "request an inspection" from the commissioner. And the statute prevents discrimination or discharge of any complainant. *See* KRS § 338.121(3)(a) (no discharge or discrimination) & (3)(b) (authorizing filing of a discrimination complaint). Faced with this pleading deficiency, rather than confessing error and amending the pleadings to assert a claim under KRS § 338.121, Elliott protested that he was not "require[d]" to "pursue his claim under" § 338.121, and could instead "file claims under Title VII or the Kentucky Civil Rights Act." Response to MJOP (DN 29) at 6. That choice was clearly odd, but clearly deliberate. Elliott explicitly waived his opportunity to rely on the statute that appears to protect the conduct he says he engaged in.

So, according to Elliott's pleadings, which the Court accepts as true, there remains an obvious mismatch between the facts Elliott says make out a plausible claim for retaliation (termination after complaints about Covid mitigation) and the civil-rights statute on which he based his claim (which does not speak of health, or Covid, or hand sanitizer, or workplace safety). The law is not a "choose your own adventure" game in which plaintiffs can stitch together disparate sections of the code to expand rights not granted by the legislature. *Cf. Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) ("[The court's] inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent." (quotation

7

omitted)). Elliott failed to allege a prima facie case that he was engaged in a protected activity, so his retaliation claim fails as a matter of law. *See Bankers*, 466 S.W.3d at 460.

### 2.

Elliott also asserts that his termination for complaining about Covid protection was "in violation of public policy." FAC ¶¶ 33–34. The complaint, however, doesn't specify the public policy on which he relies, and his response to the motion for judgment on the pleadings merely lists the public policy as being "found within executive orders issued by the governor and the Center for Disease Control." Response to MJOP at 4–5. Such vague assertions are insufficient to state a plausible claim for wrongful termination in violation of public policy.

Under Kentucky law, an employee is generally terminable at will. *Firestone Textile Co. v. Meadows*, 666 S.W.2d 730, 731 (Ky. 1983). That means that an "employer may discharge his at-will employee for good cause, for no cause, or for a cause that some might view as morally indefensible." *Id.* A narrow "public-policy" exception to this doctrine, however, covers an employee's discharge that is "contrary to a fundamental and well-defined public policy as evidenced by existing … constitutional or statutory law." *Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985). A discharge contradicts public policy only if (1) there are "explicit legislative statements prohibiting the discharge," (2) "the alleged reason for the discharge … was the employee's failure or refusal to violate a law in the course of employment," or (3) "the reason for the discharge was the employee's exercise of a right conferred by well-established legislative enactment." *Hill v. Ky. Lottery Corp.*, 327 S.W.3d 412, 422 (Ky. 2010) (quoting *Grzyb*, 700 S.W.2d at 402); *see Mitchell v. Univ. of Ky.*, 366 S.W.3d 895, 898 (Ky. 2012). If a claim meets this standard, has "an employment-related nexus," *Marshall v. Montaplast of N. Am., Inc.*, 575 S.W.3d 650, 652 (Ky. 2019), and no other statute provides "a structure for pursuing a claim,'" *Grzyb*, 700 S.W.2d at 401, then a plaintiff may sue under the so-called public-policy exception.

Elliott hasn't clearly identified the public-policy provision he says Raytheon violated by terminating him. Elliott's cursory citation to state and federal executive orders fails for two reasons. First, the pleading doesn't specify the provision of law on which he bases his claim. *See* FED. R. CIV. P. 8(a)(2) ("A pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief."). Dismissal of this claim would be appropriate under Rule 12(b)(6) for that reason alone. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'") (quoting *Twombly*, 550 U.S. at 555).

Second, and more problematic, is that Elliott relies on the wrong law. Even assuming a policy "found in" gubernatorial and federal-agency orders was enough to

plead a claim, Kentucky courts do not permit wrongful-termination claims based on federal regulatory guidance or gubernatorial executive orders. "Kentucky courts … limit the at-will employment exception to *constitutional and statutory provisions*." *Valdivida v. Paducah Center for Health & Rehab.*, 507 F. Supp. 3d 805, 812 (W.D. Ky. 2020) (emphasis added); *see Hill*, 327 S.W.3d at 422 n.6 ("The second prong of the *Firestone* test is that the public policy be evidenced by a *statutory or constitutional provision*." (emphasis added)); *Grzyb*, 700 S.W.2d at 401 ("That policy must be evidenced by a *constitutional or statutory provision*." (emphasis added)); *Mitchell v. Coldstream Lab'ys*, 337 S.W.3d 642, 645 (Ky. Ct. App. 2010) (requiring the plaintiff to plead a public policy that is "evidenced by a constitutional or statutory provision").

This count fails to state a claim and the Court dismisses it on that basis.

## ORDER

The Court grants Raytheon's motion for judgment on the pleadings (DN 23), denies Raytheon's motion to dismiss as moot (DN 13), and denies Elliott's motion to remand. (DN 21).